48 CCPA

**Application of Raymond G. ROSHONG.**
**Patent Appeal No. 6631.**

United States Court of Customs
and Patent Appeals.
Jan. 13, 1961.

Charles F. Voytech, Horton, Davis & McCaleb, Chicago, Ill., for appellant.

Clarence W. Moore, Washington, D. C. (Raymond E. Martin, Washington, D. C., of counsel), for Commissioner of Patents.

Before WORLEY, Chief Judge, RICH, MARTIN and SMITH, Judges, and Judge WILLIAM H. KIRKPATRICK.[1]

WORLEY, Chief Judge.

■ This is an appeal from the decision of the Board of Appeals of the United States Patent Office, affirming the rejection by the Primary Examiner of claims 15, 16, and 18 of appellant's application for a patent on a method of controlling the contour of the operating surface of a lap plate. Claim 15 is representative of the appealed claims and reads:

"15. The method of controlling the contour as to flatness, convexity, or concavity of the operating surface of a lap plate rotating about a fixed axis, by means of a rigid dressing tool which comprises positioning the tool to rest upon the lap surface, constraining the tool to rotate about an axis eccentric to the axis of rotation of the lap while allowing the tool to move through an angle with respect to the axis of the lap so that the dressing face of the tool may follow the contour of the lap, positively rotating the tool about its axis, and regulating the linear velocity between the contacting lap and tool surfaces to produce different degrees of wear of the lap surface by the tool along a radius of the lap surface."

The single reference relied on by the board is

Bullard 2,565,590 August 28, 1951.

Appellant's application discloses a lapping machine comprising a flat, annular, horizontal plate which is rotated about its vertical axis. In operation the articles to be lapped are placed on the surface of the plate and are held against rotating with the plate by heavy wear rings which surround them and which also rest on the surface of the plate, the rings being mounted on vertical spindles journalled in the arms of a spider which is fixedly supported above the plate. An abrasive slurry is supplied to the surface of the plate to grind the articles as the plate moves under them. It appears that such action tends to wear the surface of the plate unevenly, thus it is desirable to provide means to prevent such uneven wearing.

As explained in appellant's application, one means of effecting that result is to make the wear rings of greater diameter than the width of the lap plate so that they overhang the inner and outer edges of the plate. With that arrangement the friction between the rings and the plate causes the rotation of the rings at a speed which may be varied by adjusting the rings radially inwardly or outwardly to vary the amount by which they overhang the inner and outer edges of the plate. Such adjustment varies the manner in which the rings wear down the surface of the plate, and thus controls the contour of the surface.

In the application at bar the rings are not radially adjustable but the spindles on which they are mounted are provided at their upper ends with sheaves which are connected by a belt. The belt is driv-

1. United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of Judge O'CONNELL, pursuant to provisions of Section 294(d), Title 28, U.S.C.

en by a reversible motor at any desired speed, so that the relative movement between the wear rings and the plate, hence the contour to which the plate will be worn, may be varied as desired. Because of the independent drive it is not necessary for the wear rings to overhang the edges of the lap plate. As shown, the rings extend only across the radial dimension of the plate.

The Bullard patent discloses, in Figs. 1 to 3, a lapping machine comprising a combination of an annular lap plate and wear rings, surrounding the articles to be lapped, resting on the plate and mounted on spindles journalled in a supporting structure above the plate, the general arrangement being similar to that in appellant's application. The diameter of the wear rings is substantially equal to the width of the annular lap plate, so that the rings do not overlap the edges of the plate. Sheaves are provided at the upper ends of the spindles and are connected by a belt, but there are no external means for applying a driving force to the belt as in appellant's device.

Means are provided for adjusting the position of the spindles on which Bullard's wear rings are mounted toward or away from the axis on which the lap plate rotates, and the patent specification states that when the rings are located in an inner position the lap plate surface will be ground to a concave form. When they are in an outer position a convex surface will result, and when they are in an intermediate position the surface will be worn plane. Thus, by regulating the position of the wear rings the contour of the lap plate surface may be controlled.

Bullard states that the speed of the wear rings relative to lap rotation may be controlled by the relative size of the sheaves on the spindles on which the rings are mounted. He correctly notes that if those sheaves are all of the same diameter the rings will rotate at the same speed. He then suggests, by way of example, that one sheave be given a diameter half that of the others and states that with such arrangement the speed of the wear rings relative to the lap plate is found to be reduced from 50 to 40 revolutions per minute. As to that arrangement it is correctly stated in appellant's brief that "if the *same* belt passes around *all* of the sheaves, the smaller sheaves will rotate *faster* than the larger sheaves, and hence if some of the rings are slowed down the rings with the smaller sheaves will be speeded up." (Emphasis quoted.)

In Fig. 4 of the Bullard patent, which is described as "a fragmentary plan view of the lapping machine and showing a truing ring on the lap surface," there is shown a single ring of a diameter considerably larger than the width of the lap plate. The only specific description of that modification is found in the following paragraph of the specification:

"In Figure 4, I have illustrated a method and means whereby a lap surface may be dressed, and I accomplish this by providing a truing ring 31 which may be supported by one of the cross arms carried by the bar 36, and which truing ring has considerable weight, by way of example, 250 pounds, the truing ring overlapping the forty-one inch diameter lap surface as illustrated. This truing ring will recondition or dress the lap surface without the necessity of removing the lap from the table, thus saving expense and time of workmen in this regard."

The board was of the opinion that the appealed claims recite methods in such broad terms as to be anticipated by the inherent operation of the Bullard device. The correctness of that holding is the sole issue here. The board originally relied on the embodiment of Figs. 1 to 3 of Bullard but, in response to a petition for rehearing, agreed that the pertinence of those figures alone was doubtful, and relied only on the embodiment of Fig. 4. Accordingly, the disclosure of the former embodiment is pertinent here only so far as it also applies to the latter.

While the board did not state in detail how it interpreted the disclosure of Bullard's Fig. 4, it apparently took the position set forth in the Commissioner's brief that the "truing ring" of that figure was to be used in place of one of the five wear rings of Figs. 1 to 3. We do not think that conclusion correct. While Fig. 4 is described as a fragmentary view of the machine, it shows the complete lapping plate, and there is no suggestion, even by dotted lines, that the use of more than one truing or wear ring is contemplated. The showing of one ring corresponds with the description of Fig. 4 which refers to *a truing ring* which "will recondition or dress the lap surface without the necessity of removing the lap from the table." That language clearly indicates that all the dressing is accomplished by one ring. Moreover, the truing ring is so large that it would not be possible to use four wear rings of that size in association with it.

Bullard's description of the variation of ring speeds by changing the size of one or more sheaves relates solely to wear rings which enclose the work to be ground. Apparently his reason for changing the speed of the rings is that it "directly affects the rate of revolution of the work." The truing ring of Fig. 4, as shown, does not enclose any work, thus there would be no apparent reason for varying its speed. Further, the truing ring is of much greater size and weight than the wear rings, and if it were connected with a belt to several wear rings it is not clear what effect, if any, they would have on its speed of rotation. It is quite possible that it would continue to rotate at approximately its normal speed and the wear rings would conform to that speed.

We have carefully considered the Bullard patent but are unable to find therein a fair disclosure of varying the speed of a truing ring of the kind shown in Fig. 4. The entire disclosure is consistent with the idea that the ring is to be used alone and rotated solely by its frictional engagement with the lap. It is true that a sheave is shown at the top of the spindle on which the ring is mounted, but that is apparently because the spindle is one of those on which wear rings are mounted during the lapping operation. There is no suggestion that power is to be applied to the sheave to affect the speed of rotation of the truing ring.

Even if it be assumed, however, that Bullard does disclose an arrangement in which a truing ring is rotated at a variable speed by means of its connection with other rings, we are unable to agree with the board that such operation would satisfy the requirements of the appealed claims. Each of those claims is drawn to a method of controlling or changing the contour of a lap surface by positively rotating a tool at a speed other than that imparted to it by the lap. Such a limitation in a method claim of this type cannot be disregarded. Hall v. Shimadzu, 59 F.2d 225, 19 CCPA 1288; Kropa v. Robie et al., 187 F.2d 150, 38 CCPA 858. There is no suggestion whatever in the Bullard patent that variation of the contour of the lap is effected by the use of sheaves of different diameters, and it is by no means clear that such result is inherent. Since no external power is supplied to the system by the change in size of the sheaves, it is evident that any increase in the speed of one wear ring must be compensated for by a corresponding decrease in the speed of one or more other rings. Accordingly, since all the rings move over the same part of the lap surface there is no reason to suppose that their combined effect would be materially different, regardless of the relative sizes of the sheaves.

In our opinion the appealed claims recite methods of operation which are not disclosed in or suggested by Bullard, or inherent in the operation of the machine disclosed by that patent.

The decision is reversed.

Reversed.